J-A02028-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
VIKKI A. BORIS :
:
:
Appellant : No. 286 MDA 2023

Appeal from the Judgment of Sentence Entered October 7, 2022
In the Court of Common Pleas of Northumberland County
Criminal Division at No(s): CP-49-CR-0001670-2019

BEFORE: NICHOLS, J., KING, J., and SULLIVAN, J.

MEMORANDUM BY KING, J.: **FILED MAY 20, 2024**

Appellant, Vikki A. Boris, appeals from the judgment of sentence entered in the Northumberland County Court of Common Pleas, following her jury trial convictions for disorderly conduct, simple assault, and harassment.[1] We affirm.

The relevant facts and procedural history of this case are as follows. The Commonwealth charged Appellant with disorderly conduct, simple assault, harassment, and criminal mischief, in relation to a physical altercation that occurred with Jovanna Doak ("Victim"). Appellant proceeded to a jury trial on April 6, 2022. Victim testified that Appellant lives on the same street as her. On the morning of September 12, 2019, Victim walked her son to the

_____

[1] 18 Pa.C.S.A. §§ 5503(a)(1), 2701(a)(1), and 2709(a)(1), respectively.

bus stop and waited for him to board the bus. Victim and her friend, Aimee McHugh, began walking towards their homes from the bus stop. As they were passing Appellant's house, Appellant, who was on the porch, stated to Victim that she heard Victim had made negative comments about Appellant's mother. Victim told Appellant that she did not want to engage with her and attempted to continue walking past Appellant's house.

Appellant then jumped off her porch, over the railing, and landed on her knees on the sidewalk in front of Victim. Appellant got up, and as she was rising, Appellant hit Victim on the left side of her jaw. Victim testified that she dropped her coffee mug and her phone to attempt to shield her face. Both the coffee mug and the phone broke when they hit the ground. Appellant pushed Victim against the gate. Victim began to walk away, and Appellant followed, continuing to hit Victim's head. Victim stated that Appellant's friend, Patty Wondolowski, grabbed Victim's hand and pushed her against a car. At this point, Victim hit Appellant in the head in self-defense. Another bystander, Jennifer Daly, came over and pulled Appellant off Victim and the physical altercation ended. Victim then called the police. After giving her statement, Victim went to the hospital to treat injuries to her face.

Victim further testified that she believed the altercation occurred because of a Facebook post that she made about an incident she witnessed at the bus stop that reminded her of when she was a child and an adult bullied her. Appellant interpreted this post to be about her mother. Victim stated

that she did not mention any names or tag anyone in the post. Victim is also not connected with Appellant or any of Appellant's relatives on Facebook.

Ms. McHugh testified that she is neighbors with both Appellant and Victim. Ms. McHugh testified largely in line with Victim's testimony. She could not recall what Appellant said to Victim but stated that Appellant initiated the verbal confrontation and Victim attempted to walk away from it. Ms. McHugh also stated that Appellant jumped over the railing, stood up, and then initiated the physical confrontation. She did not recall Victim hitting Appellant with her coffee mug and stated that she thinks Victim dropped the mug during the altercation. Ms. McHugh did not participate in the physical altercation in any manner. She further stated that she did not recall Ms. Wondolowski engaging in the physical altercation in any manner.

Ms. Daly testified that she did not witness how the physical altercation between Appellant and Victim began. She was standing at the bus stop when she heard Ms. McHugh screaming. When she looked over, she saw Appellant with Victim's hair in her hand, repeatedly hitting Victim in the face. Ms. Daly walked over, grabbed Appellant's right hand, put it behind Appellant's back and turned Appellant away from Victim. After this, the physical altercation ended, and the police were called to the scene. She did not see anyone else intervene in the fight.

Officer Stephen Mazzeo testified that he responded to the scene and saw Appellant and her mother on the porch. Ms. Wondolowski was standing

near the porch and Victim was on the sidewalk further away from the porch. He checked with Victim to see if she needed medical attention. When she refused, the officer asked Victim to wait at her house while he spoke with Appellant. He stated that Victim was far enough away that she was not in hearing distance while he spoke with the individuals on and near Appellant's porch.

Appellant told Officer Mazzeo that she jumped off her porch, landed on her knees, and walked up to Victim to confront her about an issue between Victim and Appellant's mother. At this point, Victim pushed her, and Appellant punched her in response. Officer Mazzeo noted that Appellant had a mark on her forehead and blood on her knees. He inquired several times whether Appellant wanted medical attention and Appellant refused. Appellant's mother, Giselle Savitski, stated that the confrontation occurred due to a Facebook post but did not provide any statements at the time about how the physical altercation began. Ms. Wondolowski stated that Appellant jumped off the porch, advanced on the sidewalk and assaulted Victim. Ms. Wondolowski added that Victim hit Appellant in the head with a coffee cup after Appellant attacked Victim. Officer Mazzeo noted a broken ceramic coffee cup lying on the sidewalk.

Officer Mazzeo then went over to Victim's house to speak to her. Victim stated that Appellant jumped off the porch, advanced towards her and assaulted her. Victim stated that at some point, she was thrown into a car,

and she tried to defend herself. Victim maintained that she did not hit Appellant with a coffee cup. Officer Mazzeo observed that Victim's face was swollen, and blood was splattered on her shirt from where she bled from her lip. He again offered to call emergency medical services and Victim accepted.

Appellant also stated that when Victim was walking by her porch, she verbally confronted Victim, and Victim responded with profanity. Appellant climbed over her railing and fell on the ground, landing on her knees. When Appellant got up, Victim began screaming in Appellant's face and then pushed Appellant. Appellant grabbed Victim by the hair and Victim hit Appellant in the head with her coffee mug. At this point, Appellant hit Victim in the face and they began hitting each other until Ms. Daly and Ms. McHugh came over. Ms. Daly and Ms. McHugh held Appellant's hand while Victim continued to hit Appellant in the head. At this point, Ms. Wondolowski came over, grabbed Victim, and the two parties were pulled away from each other. Appellant testified that she had lumps on her head and bruising on her face as a result of the physical altercation. Appellant's mother and Ms. Wondolowski testified in accordance with Appellant's account. Ms. Wondolowski further stated that she never told Officer Mazzeo that Appellant assaulted Victim first.

The jury found Appellant guilty of disorderly conduct, simple assault, and harassment, and not guilty of criminal mischief. On October 7, 2022, the court imposed an aggregate sentence of one year of probation and fines. Appellant timely filed a post-sentence motion on October 17, 2022, which the

court denied on February 2, 2023. On February 13, 2023, Appellant filed a timely notice of appeal. The court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of matters complained of on appeal on February 16, 2023, and Appellant timely complied on April 20, 2023.

Appellant raises the following issues for our review:

> Was the evidence insufficient to prove the charges of simple assault, disorderly conduct, and harassment because the Commonwealth failed to disprove justification or self-defense?

> Were the verdicts against the weight of the evidence where the witnesses for the Commonwealth were contradictory, inconsistent, and unreliable that it could not be trusted?

(Appellant's Brief at 5).

In her issues combined, Appellant concedes that the Commonwealth satisfied the elements for simple assault, disorderly conduct, and harassment. (*See id.* at 19-20). Nevertheless, Appellant asserts that she acted in self-defense. Appellant argues that Appellant's mother and Ms. Wondolowski provided testimony consistent with Appellant's account of events, demonstrating that Victim was the initial aggressor and Appellant only acted to defend herself. Appellant maintains that the Commonwealth failed to put forth any reliable evidence to refute this evidence. Appellant further argues that the Commonwealth failed to put forth any evidence that Appellant intended to cause public annoyance or alarm, or that this incident caused inconvenience or alarm to the public to support the disorderly conduct conviction.

Additionally, Appellant claims that the Commonwealth witnesses were so inconsistent with one another that they were wholly unreliable. Appellant contends that Victim's and Ms. McHugh's accounts of the incident differ regarding Appellant's position when she attacked Victim and which individuals were involved in the physical altercation. Appellant insists that neither Ms. Daly nor Officer Mazzeo saw who initiated the physical altercation. Appellant also complains that Officer Mazzeo's testimony regarding the verbal statements he took on the day of the incident are unreliable because Ms. Wondolowski testified that she did not make the statements that Officer Mazzeo noted in his report. Appellant concludes that her convictions are unsupported by sufficient evidence and against the great weight of the evidence, and this Court should vacate the judgment of sentence. We disagree.

Appellate review of a challenge to the sufficiency of the evidence is governed by the following principles:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every

element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [finder] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Jones*, 874 A.2d 108, 120-21 (Pa.Super. 2005) (quoting

*Commonwealth v. Bullick*, 830 A.2d 998, 1000 (Pa.Super. 2003)).

Additionally,

The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the…verdict if it is so contrary to the evidence as to shock one's sense of justice.

*Commonwealth v. Small*, 559 Pa. 423, [435,] 741 A.2d 666, 672-73 (1999). Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Champney*, 574 Pa. 435, 444, 832 A.2d 403, 408

(2003), *cert. denied*, 542 U.S. 939, 124 S.Ct. 2906, 159 L.Ed.2d 816 (2004)

(most internal citations omitted).

The Pennsylvania Crimes Code defines disorderly conduct, in relevant

part, as follows:

**§ 5503. Disorderly conduct**

**(a)    Offense defined**.—A person is guilty of disorderly conduct if, with intent to cause public inconvenience,

annoyance or alarm, or recklessly creating a risk thereof, he:

> (1) engages in fighting or threatening, or in violent or tumultuous behavior;

> \* \* \*

18 Pa.C.S.A. § 5503(a)(1). The definition section of the statute defines "public" as follows:

> As used in this section, the word "public" means affecting or likely to affect persons in a place to which the public or a substantial group has access; among the places included are highways, transport facilities, schools, prisons, apartment houses, places of business or amusement, **any neighborhood, or any premises which are open to the public**.

18 Pa.C.S.A. § 5503(c) (emphasis added). "The specific intent requirement of this statute may be met by a showing of a reckless disregard of the risk of public inconvenience, annoyance, or alarm, even if the appellant's intent was to send a message to a certain individual, rather than to cause public inconvenience, annoyance, or alarm." *Commonwealth v. Maerz*, 879 A.2d 1267, 1269 (Pa.Super. 2005) (internal quotation marks and citation omitted).

An individual is guilty of simple assault if she "attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another." 18 Pa.C.S.A. § 2701(a)(1). Intent may be proven by circumstantial evidence that reasonably suggests a defendant intended to cause injury. *Commonwealth v. Martuscelli*, 54 A.3d 940, 948 (Pa.Super. 2012). Bodily injury is the "impairment of physical condition or substantial pain." 18 Pa.C.S.A. § 2301.

Additionally, the Pennsylvania Crimes Code defines the offense of harassment, in pertinent part, as follows:

**§ 2709.  Harassment**

**(a)   Offense defined.—**A person commits the crime of harassment when, with intent to harass, annoy or alarm another, the person:

(1)    strikes, shoves, kicks or otherwise subjects the other person to physical contact, or attempts or threatens to do the same[.]

\*    \*    \*

18 Pa.C.S.A. § 2709(a)(1).   "An intent to harass may be inferred from the totality of the circumstances."  ***Commonwealth v. Cox***, 72 A.3d 719, 721 (Pa.Super. 2013) (quoting ***Commonwealth v. Lutes***, 793 A.2d 949, 961 (Pa.Super. 2002)).

The Crimes Code describes self-defense as follows: "the use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting [herself] against the use of unlawful force by such other person on the present occasion."  18 Pa.C.S.A. § 505(a).  After a defendant presents evidence of self-defense, the burden is on the Commonwealth to disprove the defense beyond a reasonable doubt.  ***Commonwealth v. Torres***, 564 Pa. 219, 224, 766 A.2d 342, 345 (2001) (citations omitted).  To prove that the defendant's act was not justifiable self-defense, the Commonwealth must establish: "**at least one** of the following: (1) the accused did not reasonably believe that [s]he was in

- 10 -

danger of death or serious bodily injury; or (2) the accused provoked or continued the use of force; or (3) the accused had a duty to retreat and the retreat was possible with complete safety." ***Commonwealth v. McClendon***, 874 A.2d 1223, 1229-30 (Pa.Super. 2005) (citation omitted; emphasis added). Whether the defendant was acting in self-defense is an issue for the factfinder to decide. ***Id.*** at 1230.

Instantly, the record demonstrates that the Commonwealth supplied sufficient evidence to refute Appellant's self-defense claim. Although Appellant, Appellant's mother, and Ms. Wondolowski testified at trial that Victim initiated the physical confrontation, the Commonwealth presented testimony to refute their accounts. Specifically, Victim and Ms. McHugh testified that Appellant initiated the verbal confrontation, jumped from her porch, and initiated the physical confrontation. Victim further testified that she attempted to walk away but Appellant followed her and continued to assault her. Additionally, the Commonwealth presented Officer Mazzeo's testimony, during which the officer stated that on the day of the incident, Ms. Wondolowski stated that Victim hit Appellant with a coffee cup after Appellant attacked Victim. The jury was free to believe the Commonwealth witnesses and discredit Appellant's account of events. ***See Jones, supra***. As such, there is no merit to Appellant's claim that the evidence was insufficient to disprove that Appellant acted in self-defense. ***See McClendon, supra***.

Additionally, the Commonwealth presented evidence that Appellant initiated a physical confrontation with Victim on a public street. Ms. Wondolowski, Ms. McHugh, Appellant's mother, and Ms. Daly witnessed the altercation from different places on the street. Ms. Daly further described the fight as "a whole bunch of commotion" that prompted her to walk down the street. (N.T. Trial, 4/6/22, at 69). Additionally, testimony showed that Ms. Daly, Ms. Wondolowski and Ms. McHugh intervened in some manner to stop the physical altercation. Viewed in the light most favorable to the Commonwealth as the verdict winner, the evidence was sufficient for the jury to infer that Appellant acted with intent or reckless disregard of the risk of causing public inconvenience, annoyance, or alarm and did, in fact, cause public annoyance or alarm. *See Maerz, supra*. On this record, Appellant's sufficiency claims fail. *See Jones, supra*.

Regarding Appellant's weight of the evidence claim, the jury's verdict indicated that it found the Commonwealth's witnesses credible. While there were some minor inconsistencies between Victim and Ms. McHugh's testimony, they both maintained that Appellant initiated the verbal and physical altercation. Additionally, Officer Mazzeo's testimony confirmed that Victim's testimony at trial largely aligned with Victim's statements on the day of the incident, whereas Ms. Wondolowski's testimony at trial differed from

her initial verbal statement.[2] The jury weighed the conflicting testimony and resolved any inconsistencies in favor of the Commonwealth witnesses. We decline Appellant's invitation to substitute our judgment for that of the factfinder. On this record, we discern no abuse of discretion in the court's denial of Appellant's weight claim. **See Champney, supra**. Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

_____

Benjamin D. Kohler, Esq.
Prothonotary

Date: 05/20/2024

---

[2] Appellant baldly claims on appeal that Officer Mazzeo impermissibly bolstered his testimony by discussing his years of experience. Appellant further asserts that Officer Mazzeo's testimony was impermissible hearsay. Nevertheless, Appellant failed to object to Officer Mazzeo's testimony at trial. As such, Appellant's argument is waived. **See** Pa.R.A.P. 302(a) (stating: "Issues not raised in the trial court are waived and cannot be raised for the first time on appeal").