J-A08024-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KARIMU HAMILTON | : | |
| | : | |
| Appellant | : | No. 443 EDA 2024 |

Appeal from the Judgment of Sentence Entered January 12, 2024
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0005272-2019

BEFORE: LAZARUS, P.J., McLAUGHLIN, J., and SULLIVAN, J.

MEMORANDUM BY McLAUGHLIN, J.: **FILED JULY 22, 2025**

Karimu Hamilton appeals from the judgment of sentence entered following her convictions for the summary offenses of harassment and disorderly conduct.[1] Hamilton challenges the sufficiency of the evidence and the denial of a Rule 600 motion. We affirm.

The trial court set forth the following facts:

> [Hamilton] was outside of Victim, [Rachel] Ridgeway's residence, on June 8, 2019, screaming at her with a loud voice for approximately four hours. [Hamilton] lived in the house that was attached to Victim's residence. Victim made an in-court identification of [Hamilton]. Victim took videos of [Hamilton] with her phone, which contained the audio recording, and the voice of [Hamilton] was not amplified

_____

[1] 18 Pa.C.S.A. §§ 2709(a)(3) and 5503(a)(3), respectively.

artificially.[2] [Hamilton] called Victim "fucked up cracker" and said that [Hamilton] would sue Victim. [Hamilton] further mentioned about Victim's daughter's car and Victim's husband. Victim did not interact with [Hamilton] during the screaming. At around 6 a.m. the next morning, [Hamilton] repeated the similar behavior outside of Victim's house. [Hamilton] did not care if their neighbors could hear her.

Trial Ct. Op., filed July 2, 2024, at 1.

On December 22, 2023, Hamilton's counsel filed a motion for leave to withdraw. Hamilton filed a *pro se* motion to dismiss and motion to proceed *pro se*. At a hearing, counsel adopted the *pro se* motions as his own. The court denied all three motions.

Following a January 3, 2024, bench trial, the court found Hamilton guilty of the summary offenses of harassment and disorderly conduct. The trial court sentenced Hamilton to an aggregate term of 180 days' probation, with the first ten days on electronic home monitoring.[3] Hamilton filed a notice of appeal.

Hamilton raises the following issues:

_____

[2] This video is not in the certified record. No one disputes the trial court's description of the video. It is Hamilton's responsibility as appellant to ensure the certified record is complete. ***Commonwealth v. B.D.G.***, 959 A.2d 362, 372 (Pa.Super. 2008) (*en banc*).

[3] The trial court originally sentenced Hamilton to two consecutive sentences of 90 days' probation, with the first five days at each conviction on electronic home monitoring. The court timely amended the sentence so that the sentence for harassment was for 90 days' probation, with the first 10 days on electronic home monitoring, with a consecutive sentence for disorderly conduct of 90 days' probation.

> 1. Whether the verdict of guilty of Harassment, 18 Pa.C.S.A. Section 2709, is based upon insufficient evidence, where evidence introduced at trial failed to demonstrate that [Hamilton] engaged in a "course of conduct", and evidence further failed to show that [Hamilton] acted with the requisite intent to harass, annoy or alarm.
>
> 2. Whether the verdict of guilty of Disorderly Conduct, 18 Pa.C.S.A. Section 5503, was based upon insufficient evidence, where evidence failed to show that [Hamilton] acted with the requisite intent, and failed to show that [Hamilton] was outside of her home and thereby failed to show that [Hamilton] caused or recklessly risked public inconvenience, annoyance or alarm.
>
> 3. Whether the trial in the within matter was undertaken in violation of Pa.R.Crim.P. 600(A)(2)(a).

Hamilton's Br. at 4.

Hamilton's first two issues challenge the sufficiency of the evidence. "A claim challenging the sufficiency of the evidence is a question of law." **Commonwealth v. Widmer**, 744 A.2d 745, 751 (Pa. 2000). When reviewing such a challenge, we must "determine whether, when viewed in the light most favorable to the verdict winner, the evidence at trial and all reasonable inferences therefrom [were] sufficient for the trier of fact to find that each element of the crime charged is established beyond a reasonable doubt." **Commonwealth v. Dix**, 207 A.3d 383, 390 (Pa.Super. 2019).

Hamilton first maintains the evidence did not support the disorderly conduct conviction because the Commonwealth failed to prove she intended to cause "public inconvenience, annoyance or alarm, or recklessly create a risk thereof," as required by the statute. Hamilton's Br. at 10-11. She maintains she was not in a "public" place at the time, as she was on her front

porch and "the incident did not implicate the public." *Id.* at 12. She claims that her loud tone did not begin until after the emergency personnel left the premises. Hamilton further maintains that the language used did not constitute an "obscene language" or "gesture," under the statute. *Id.* at 13-14.

Hamilton has waived her claim that the evidence did not support a finding that the language was "obscene" because she did not include this issue in her concise statement of issues raised on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). Her challenge to the disorderly conduct conviction in her Rule 1925(b) statement states only:

> Whether the verdict of guilty of Disorderly Conduct, 18 Pa.C.S.A. Section 5503, was based upon insufficient evidence, where evidence failed to show that [Hamilton] acted with the requisite intent, and failed to show that [Hamilton] was outside of her home and thereby failed to show that [Hamilton] caused or recklessly risked public inconvenience, annoyance or alarm.

Pa.R.A.P. 1925(b) statement, filed June 13, 2024. This issue does not include a challenge to whether the evidence supported a finding that the language was "obscene," and therefore it is waived. Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived.").

Hamilton preserved her claim that the conduct was not "public." Hamilton was convicted under 18 Pa.C.S.A § 5503(a)(3), which provides that "[a] person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, [the

- 4 -

person] . . . uses obscene language, or makes an obscene gesture." 18 Pa.C.S.A. § 5503(a)(3). The statute defines "public" as "affecting or likely to affect persons in a place to which the public or a substantial group has access; among the places included are highways, transport facilities, schools, prisons, apartment houses, places of business or amusement, any neighborhood, or any premises which are open to the public." *Id.* at § 5503(c).

We conclude the Commonwealth presented sufficient evidence that Hamilton's conduct affected the public. Hamilton relies on cases where the alleged conduct happened on private property that was not easily accessible by the public or where the defendant, while inside her home, yelled obscenities at police officers for under a minute after the officers broke into the home. *Commonwealth v. Beattie*, 601 A.2d 297, 301 (Pa.Super. 1991) (finding Commonwealth failed to prove defendant acted with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, where a police stop occurred on the defendant's private property, at the top of his private driveway, away from the street or public highway, the defendant's property was not open to the public and his residence was a private dwelling, not an apartment building, and where the "two acre property abuts the South Pittsburgh Water Company and an unoccupied two acre lot"); *Commonwealth v. Weiss*, 490 A.2d 853, 854, 857 (Pa.Super. 1985) (finding no conscious disregard of a substantial and unjustifiable risk that public annoyance or alarm would result from defendant's conduct where the defendant yelled profanities from inside her home after the police broke into

her home). In contrast, here, the conduct happened in a "neighborhood," which is included in the definition of "public." Hamilton was on the shared porch of the twin home and she stated she did not care whether neighbors heard her. The evidence supported a finding Hamilton acted with an "intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof." 18 Pa.C.S.A. § 5503.

Hamilton next challenges her conviction for harassment. She contends her conduct served a legitimate purpose because she was annoyed because the fire department was invading her privacy at Ridgeway's request. She claims her "remarks were undertaken in response to perceived harassment by Ms. Ridgeway," pointing out that the two had argued in the past. Hamilton's Br. at 21. Hamilton maintains she was responding to the "perceived annoyance" and did not have an intent to harass. *Id.* at 22.

A person is guilty of harassment "when, with intent to harass, annoy or alarm another, the person . . . engages in a course of conduct or repeatedly commits acts which serve no legitimate purpose[.]" 18 Pa.C.S.A. § 2709 (a)(3). "An intent to harass may be inferred from the totality of the circumstances." *Commonwealth v. Cox*, 72 A.3d 719, 721 (Pa.Super. 2013) (quoting *Commonwealth v. Lutes*, 793 A.2d 949, 961 (Pa.Super. 2002)).

Here, Hamilton did not include in her Rule 1925(b) statement a challenge to the sufficiency of the evidence to support a finding that the conduct served no legitimate purpose. Rather the statement challenged

whether she engaged in a "course of conduct" and whether she had the requisite intent:

> Whether the verdict of guilty of Harassment, 18 Pa.C.S.A. Section 2709, is based upon insufficient evidence, where evidence introduced at trial failed to demonstrate that the Defendant engaged in a "course of conduct", and evidence further failed to show that the Defendant acted with the requisite intent to harass, annoy or alarm.

Rule 1925(b) Statement, filed June 13, 2024, at 1. She therefore waived this challenge. Because her appellate brief contains no developed argument that the evidence did not support the finding of a "course of conduct," that argument is likewise waived.

Further, we conclude the evidence supported a finding that Hamilton acted with the intent to harass, annoy, or alarm another. Hamilton's yelling continued long after the police and fire departments left the property. The sustained yelling, including the use obscenities directed toward Ridgeway and her family, established Hamilton's intent to harass Ridgeway.

In her final claim, Hamilton challenges the trial court's denial of her Rule 600 motion. She notes the criminal complaint was filed on June 18, 2019 and the trial occurred on January 3, 2024. She points out the mechanical run date was June 18, 2020, and the trial occurred 1,294 days later. Hamilton agrees 1,167 days were excludable, and claims the trial happened 127 days beyond the adjusted run date.

We review a trial court's decision on a Rule 600 motion for abuse of discretion. *See Commonwealth v. Hunt*, 858 A.2d 1234, 1238 (Pa.Super.

2004) (*en banc*). Rule 600 provides that a trial "shall commence within 365 days from the date on which the complaint is filed." Pa.R.Crim.P. 600(A)(2)(a). If trial does not begin before that deadline, taking into account periods of delay in which the Commonwealth exercised due diligence in bringing the defendant to trial, as well as delay the defendant caused, the defendant may move to dismiss the charges. Pa.R.Crim.P. 600(D)(1).

When deciding a Rule 600 motion, the court first must determine the "mechanical run date," which is 365 days from the date of the filing of the complaint. **Commonwealth v. Bethea**, 185 A.3d 364, 371 (Pa.Super. 2018). Second, the court must determine whether any periods of delay are "excludable." **Id.** at 371. Excludable time for this purpose includes several possible periods of time, including as relevant in this case, delay resulting from the unavailability of the defendant or the defendant's attorney and any continuance granted at the request of the defendant or the defendant's attorney. **Hunt**, 858 A.2d at 1241. We "add the amount of excludable time, if any, to the mechanical run date to arrive at an adjusted run date." **Bethea**, 185 A.3d at 371 (citation and emphasis omitted).

If the trial did not occur before the adjusted run date, we then must decide whether the additional delay was excusable. Under Rule 600, "periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence," while "[a]ny other periods of delay shall be excluded from the computation." Pa.R.Crim.P.

600(C)(1). Excusable delay for purposes of Rule 600 is any delay that was outside the control of the Commonwealth and not the result of the Commonwealth's lack of exercise of due diligence. **Hunt**, 858 A.2d at 1241. If the Commonwealth does not bring the defendant to trial within the time required under Rule 600(A)(2)(a), the trial court must dismiss the charges. **Bethea**, 185 A.3d at 371.

The Commonwealth must demonstrate by a preponderance of the evidence that it exercised due diligence. **Commonwealth v. Bradford**, 46 A.3d 693, 701 (Pa. 2012). Due diligence "is fact-specific, to be determined case-by-case; it does not require perfect vigilance and punctilious care, but merely a showing the Commonwealth has put forth a reasonable effort." **Id.** at 701-02 (citation omitted).

The trial court states that Hamilton waived her speedy trial rights in June 2020. Although the docket includes a June 30, 2020, notation of, "Waiver of Rule 600 and Speedy Trial Rights Filed," no paper waiver appears in the record on that date and according to the transcript of the hearing, the waiver is connected to her motion for a continuance to find new counsel. N.T., June 30, 2020, at 3-5. This does not constitute a waiver of her Rule 600 rights for the remainder of the criminal proceedings.

The criminal complaint was filed on June 18, 2019. Therefore the mechanical run date was June 18, 2020. The trial occurred 1,294 days later, on January 3, 2024. Hamilton concedes there were 1,167 excludable days. Hamilton's Br. at 32. She therefore claims the adjusted run date was August

- 9 -

29, 2023 and the trial commenced 127 days beyond that date. Based on these calculations, she maintains the court erred in denying her motion to dismiss.

We conclude that, as argued by the Commonwealth, the following 137 days also are excludable.

- The 28-day period between January 6, 2020 and February 3, 2020. At the January 6, 2020 hearing, defense counsel requested a continuance so that he could consult Hamilton. N.T., Jan. 6, 2020, at 3-4. The court set a status date of February 3, 2020. Because it was a defense continuance request, this time was excludable. Pa.R.Crim.P. 600 at Cmt. (time excluded from computation in paragraphs (C)(1) and (C)(2) include "such period of delay at any stage of the proceedings as results from either the unavailability of the defendant or the defendant's attorney or any continuance granted at the request of the defendant or the defendant's attorney").

- The 15-day period between July 19, 2021 and August 3, 2021 because this was "any other period of delay." August 3, 2021, was Hamilton's first appearance after the resumption of jury trials, following the suspension of Rule 600 during the COVID 19 pandemic. The Commonwealth had no control over the trial court's calendar or its ability to accommodate an earlier date. *See Commonwealth v. Lear*, 325 A.3d 552, 563 (Pa. 2024) (finding the time from the suspension of Rule 600 in March 2020 to the first scheduled triage

conference after jury trials resumed constituted an "other period[] of delay," and therefore was excluded from the Rule 600 computation (alteration in original)).

- The 20-day period between November 16, 2021 and December 6, 2021. The trial court denied Hamilton's pre-trial motion on November 16, 2021. However, prior to that, at an October 4, 2021 hearing, the court had set the next hearing date for December 6, 2021. N.T., Oct. 4, 2021, at 16-17; Docket, at 10/4/2021 ("Criminal Notice Form Filed/Notice of Status 12/6/2021). Hamilton's counsel accepted this continuance and the time therefore is excludable. **Hunt**, 858 A.2d at 1241 ("If the defense does indicate approval or acceptance of the continuance, the time associated with the continuance is excludable under Rule 600 as a defense request.") (citation omitted). Further, the Commonwealth acted diligently during this time. Therefore, even if it was not excludable, the time would be excusable, as it was outside the control of the Commonwealth and the Commonwealth acted with due diligence.

- The 15-day period between February 6, 2023 and February 21, 2023. On February 6, 2023, Hamilton appeared at a hearing *pro se*. N.T., Feb. 2, 2023, at 3-4. The court gave Hamilton two weeks to find an attorney and set a court date for February 21, 2023. **Id.** at 4. This time was excludable. **See** Pa.R.Crim.P. 600, Cmt.

- The 59-day period from July 24, 2023 to September 21, 2023. At the July 24, 2023 conference, Hamilton's new counsel stated he was receiving discovery from prior counsel and the Commonwealth, stated he had a consultation scheduled with Hamilton in August, and requested a September trial date. N.T., July 24, 2023, at 3-4. The court therefore scheduled a September trial date. This time is excludable.

Therefore, there is an additional 137 days of excludable time, with a total of 1,304 excludable days. Accordingly, the January 3, 2024 trial occurred before the adjusted run date of January 13, 2024, and no Rule 600 violation occurred.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/22/2025